UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JAMES MARTZALL, | § | |
| Plaintiff, | § § § | |
| v. | § § | SA-23-CV-10-OLG (HJB) |
| SELECT PORTFOLIO SERVICING, INC., | § § § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns the Motion for Summary Judgment (Docket Entry 7) and Motion for Non-Monetary Sanctions (Docket Entry 8) filed by Defendant Select Portfolio Servicing, Inc. ("SPS"). Pretrial matters have been referred to the undersigned for consideration. (Docket Entry 9.) *See* 28 U.S.C. § 636(c)(1). For the reasons set out below, I recommend that SPS's Motion for Summary Judgment (Docket Entry 7) be **GRANTED**, and that its Motion for Non-Monetary Sanctions (Docket Entry 8) be **GRANTED IN PART and DENIED IN PART**.

**I.      Jurisdiction.**

The Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The parties are completely diverse in citizenship and the amount in controversy exceeds $75,000, exclusive of interests and costs.[1] I have authority to issue this report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

---

[1] In a mortgage foreclosure case, the amount in controversy is determined by the value of the property at issue. *Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338, 341 (5th Cir. 2013). In 2022, the value of the property at issue here was appraised at $541,610. (Docket Entry 1-7 at 3.)

**II.     Background.**

On February 28, 2006, Plaintiff James Martzall obtained a mortgage note to purchase his home, located at 16543 Inwood Cove, San Antonio, Texas ("the Property"). (Docket Entry 7-2.) The note was valued at $234,320.00. (*Id.*) The current mortgagee is Deutsche Bank National Trust Company, as Indenture Trustee, on behalf of the holders of the Accredited Mortgage Loan Trust 2006-2 Asset Backed Notes ("Deutsche"). (Docket Entry 7-4, at 1.) SPS is the current loan servicer. (Docket Entry 7-9 at 1.) SPS also has limited power of attorney to secure payment from Martzall and to handle any foreclosure proceedings, if necessary, on Deutsche's behalf. (Docket Entry 7-8 at 2.)

Martzall has failed to make payments on his mortgage since May 1, 2016. (Docket Entries 7, at 1, 3; 7-5, at 3.) SPS sent Martzall at least two notices of default—on October 17, 2016, and January 13, 2017, respectively—each time demanding payment of the delinquent balance. (Docket Entries 7-5, at 2–3; 7-6, at 2–3.) On April 12, 2018, after reviewing a request by Martzall for loss mitigation assistance, SPS offered Martzall a Repayment Plan. (Docket Entry 7-9 at 1.) SPS warned Martzall that failure to accept the Repayment Plan by May 6, 2018, constitutes a rejection of the offer. (*Id.*) Martzall failed to make any payments. (*See* Docket Entry 7, at 1, 3; 7-5 at 3.)

On November 22, 2021, SPS, through its attorneys, sent Martzall a Notice of Acceleration and Posting. (Docket Entry 7-7.) It informed Martzall that, in light of his delinquency, his full remaining mortgage balance was "immediately due and payable," and that Deutsche, through SPS and its attorneys, would be "proceeding to foreclose and sell the [P]roperty." (*Id.* at 2.) Deutsche and SPS, through their attorneys, posted notice of a foreclosure sale to take place on January 4,

2022. (*Id.* at 4.) Martzall certified his receipt of the notice of acceleration and the scheduled foreclosure sale on November 27, 2021. (*Id.* at 5.)

Martzall responded by filing a series of lawsuits. [2] He filed the first lawsuit on December 30, 2021, in the 131st Judicial District Court, Bexar County. (*See* SA-22-CV-18-XR, Docket Entry 1-3, at 1.) That same day, Martzall sought and received an *ex parte* temporary restraining order, enjoining Deutsche from proceeding with the foreclosure sale. (*Id.*) In this lawsuit, Martzall argued that the foreclosure sale was time-barred under Texas Civil Practice and Remedies Code § 16.035. (5:22-CV-18-XR, Docket Entry 1-4, at 2.) Deutsche removed the case to this Court on January 10, 2022. (5:22-CV-18-XR, Docket Entry 1.) Martzall then moved for preliminary injunction, on April 19, 2022, which the Court denied. (*See* SA-:22-CV-18-XR, Docket Entry 21; Text Order Dated May 13, 2022.)

Martzall then proceeded to file a second lawsuit on June 3, 2022, in the 225th Judicial District Court, Bexar County. (SA-22-CV-608-XR, Docket Entry 1-3, at 1.) Martzall again sought and received an *ex parte* temporary restraining order, this time enjoining *SPS* from proceeding with the foreclosure sale. (*Id.*) Again, Martzall argued that the foreclosure sale was time-barred under the Texas Civil Practices and Remedies Code. (SA-22-CV-608-XR, Docket Entry 1-4, at 2.) SPS removed the case to this Court on June 9, 2022. (SA-22-CV-608-XR, Docket Entry 1.)

These two suits were ultimately consolidated, with the Court noting that they both "involve the same property, transactions, and occurrences," and that the only difference was the choice of defendant: Deutsche in the first, and SPS in the second. (SA-22-CV-18-XR, Docket Entry 33, at

---

[2] The Court may take judicial of Martzall's prior litigation. *See United States v. Huntsberry*, 956 F.3d 270, 285 (5th Cir. 2020) ("It is well-settled that courts may judicially notice court records as evidence of judicial actions.") (citations omitted); *Landry v. Lynaugh*, 844 F.2d 1122, 1124 n.8 (5th Cir. 1988) (judicially noticing state-court trial records).

4–5.) After the cases were consolidated, Martzall advised the Court that he had no intention of proceeding with the case. (*See* SA-22-CV-18-XR, Docket Entry 38, at 1.) The Court construed this as a notice of voluntary dismissal, and dismissed the case with prejudice on October 5, 2022. (5:22-CV-18-XR, Docket Entry 39.)

Shortly thereafter, Martzall filed this present suit—his third—on December 28, 2022, in 37th Judicial District Court, Bexar County. (Docket Entry 1-3.) Martzall's sole claim is that SPS violated Regulation X of the Real Estate Settlement Procedures Act ("RESPA"): *viz.*, 12 C.F.R. § 1024.41 (2021). (Docket Entry 104 at 2–3.) Specifically, Martzall contends that SPS violated this regulatory provision by scheduling a foreclosure sale of the Property for January 3, 2023, while actively considering Martzall for loss-mitigation assistance. (Docket Entry 1-4 at 3.) The same day he filed suit, Martzall sought and received yet another *ex parte* temporary restraining order, enjoining SPS from proceeding with the scheduled foreclosure sale. (Docket Entries 1-3, at 1; 1-4, at 4–5.) In his petition, Martzall seeks declaratory and injunctive relief. (Docket Entry 1-4 at 2, 5.) SPS removed the case to this Court on January 4, 2023. (Docket Entry 1.) Martzall has not participated in prosecuting his case since its removal.

SPS now moves for summary judgment (Docket Entry 7) and for non-monetary sanctions in the form of a pre-filing injunction (Docket Entry 8.) Martzall's deadline to respond to SPS's motion for summary judgment was August 15, 2023. *See* W.D. TEX. R. CV-7(d)(2). He filed no response. On August 29, 2023, the Court gave Martzall a second opportunity to do so, ordering him to respond no later than September 20, 2023. (Docket Entry 10, at 1.) Again, he filed no response. Martzall also failed respond to SPS's motion for sanctions by his August 30, 2023, deadline. *See* W.D. TEX. R. CV-7(d)(2). Accordingly, both of SPS's motions are unopposed. *See*

*id.* ("If there is no response filed within the time period prescribed by this rule, the court may grant the motion as unopposed.").

### III.  SPS's Motion for Summary Judgment.

#### a.  *Legal standard.*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  When seeking summary judgment on a claim or defense on which it bears the burden of proof at trial, the movant must produce evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  By contrast, when the non-movant bears the burden of proof at trial, "the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015).  The movant may do this by "identifying those portions of [the record] which it believes demonstrates the absence of a genuine [dispute] of material fact."  *MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022).  Once the movant has done so, the non-movant must respond "by setting forth particular facts indicating there is a genuine issue for trial." *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

Pursuant to Local Rule CV-7(d)(2), the failure to timely respond to a motion may result in the Court's granting it as unopposed.  Yet, "[a] district court may not automatically grant summary judgment simply because the nonmovant fails to respond." *John v. State of La. (Bd. of Trs. for State Colls. & Univs.)*, 757 F.2d 698, 710 (5th Cir. 1985) (citing *Boazman v. Econ. Lab'y, Inc.*, 537 F.2d 210, 213–14 (5th Cir. 1976)).  "Even when a local rule equates the failure to file a response

5

with consent to a motion for summary judgment, the motion must still satisfy the requirements of . . . [Federal Rule of Civil Procedure] 56." O'CONNOR'S FEDERAL RULES * CIVIL TRIALS, Ch. 7-B § 4.1 (2023 ed.) (citations omitted).  If the non-movant fails to respond, however, the Court may deem the movant's assertions of fact "undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2).  In that case, the only remaining question for the Court is whether, based on those undisputed facts, "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  In answering that question, the Court must continue to "view all inferences drawn from the factual record in the light most favorable to the nonmoving party." *Air Evac EMS, Inc. v. Sullivan*, 331 F. Supp. 3d 650, 657 (W.D. Tex. 2018) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

    **b.** *Analysis.*

SPS moves for summary judgment on two grounds.  First, it argues that that there are no genuine disputes of material fact as to Martzall's RESPA claim and that it is entitled to judgment as a matter of law on that claim.  (Docket Entry 7 at 7–9.)  Second, it contends that Martzall's claim is precluded by the affirmative defense of *res judicata*.  (*Id.* at 9–10.)  Because SPS is correct in the first instance, its Motion for Summary Judgment (Docket Entry 7) should be granted.

        *i.* *Martzall's RESPA claim.*

Martzall's RESPA claim is based on Regulation X—12 C.F.R. § 1024 *et. seq.*—which was promulgated by the Consumer Financial Protection Bureau.  *See* 12 C.F.R. § 1024.1 (2021).  Section 1024.41(g), which Martzall invokes, prohibits dual tracking—*i.e.*, where a lender "actively pursues foreclosure while simultaneously considering the borrower for loss mitigation options." *Gresham v. Wells Fargo Bank, N.A.*, 642 F. App'x 355, 359 (5th Cir. 2016) (citing 12 C.F.R. § 1024.41).  However, section 1024.41(g) only applies where "a servicer receives a complete loss

6

mitigation application more than 37 days before a foreclosure sale." *Gresham*, 641 F. App'x at 359 (citing 12 C.F.R. § 1024.41(c)).

SPS argues that it is entitled to summary judgment on Martzall's RESPA claim for three reasons: (1) that Martzall produced no evidence of a complete loss mitigation application filed more than 37 days before the scheduled sale; (2) that SPS was required to comply with the provisions of § 1024.41 only once—which it did; and (3) that Martzall has produced no evidence that he suffered any actual damages from the alleged RESPA violation. Each of these arguments are addressed in turn below.

First SPS argues that Martzall failed to produce any evidence that he submitted a complete loss mitigation application more than 37 days before the January 3, 2023, foreclosure sale. The record appears to be in dispute on this point. Thirty-seven days before the scheduled foreclosure sale on January 3, 2023, was November 27, 2022. Martzall attached three letters to his state court petition, which were purportedly sent to SPS. (Docket Entry 1-4, at 9–11.) The first letter, ostensibly sent on November 26, 2022—38 days before the scheduled foreclosure sale—acknowledges that SPS "recently declined" Martzall's request for loss mitigation assistance, and indicates that he "recently appealed" its decision. (*Id.* at 11.)[3] SPS does not claim that the letter was irrelevant, or fabricated; indeed, it does not discuss the letter at all. From this letter, and with all inferences drawn therefrom in the light most favorable to Martzall, a reasonable jury could infer that he filed a complete loss mitigation application more than 37 days before the January 3, 2023, foreclosure sale.

---

[3] The other two letters were both ostensibly sent on December 26, 2022. (Docket Entry 1-4 at 9–10.) The first suggests that SPS requested additional information from Martzall on December 9, 2022, as part of its review of his loss-mitigation options. (*Id.* at 10.) The second contends that SPS provided unclear instructions as to additional information that it needed from Martzall to complete its loss mitigation review. (*Id.* at 9.)

SPS next argues that Martzall is precluded from bringing his RESPA claim because § 1024.41 "only applies to a borrower's first loss mitigation application." (Docket Entry 7 at 8 (quoting cases).) On this point, SPS is correct. SPS was "only required to comply with the requirements of this section for a single complete loss mitigation application. . . ." *Germain v. U.S. Bank Nat'l Ass'n*, No. 3:15-CV-1694-M (BT), 2018 WL 1517860, at *6 (N.D. Tex. Mar. 28, 2018), *aff'd*, 2006-7, 920 F.3d 269 (5th Cir. 2019); *See also Allen v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:16-CV-0249-D, 2017 WL 3421067, at *4 (N.D. Tex. Aug. 9, 2017) ("The plain text of 12 C.F.R. § 1024.41 does not require compliance with 12 C.F.R. § 1024.41 for multiple loss mitigation applications. . . ."). SPS produced evidence demonstrating that it already reviewed a prior loss mitigation application from Martzall—which culminated in SPS offering him a repayment plan on April 12, 2018. (Docket Entry 7-9.) Despite SPS's offer, Martzall failed to make any payments and has remained delinquent since May 1, 2016. (Docket Entry 7 at 3.) Having already complied once with the strictures of Regulation X, SPS was not required by RESPA to do so again. SPS therefore is entitled to summary judgment on this ground. *See McGee v. Wilmington Sav. Fund Soc'y FSB*, No. 19-CV-2883-S-BK, 2021 WL 1135035, at *2 (N.D. Tex. Feb. 18, 2021) ("A servicer is excused from compliance with these provisions if it previously complied . . . [and] the borrower . . . remained continuously delinquent thereafter.") (citing 12 C.F.R. § 1024.41(i) (2021)).

Finally, SPS also argues that it is entitled to summary judgment on Martzall's RESPA claim because he has produced no evidence that he suffered any actual damages as a result of the alleged violations. (Docket Entry 7 at 8.) Again, SPS is correct. To assert a cause of action for a RESPA violation, "a claimant must show that actual damages resulted [there]from. . . ." *Whittier v. Ocwen Loan Serv., L.L.C.*, 594 F. App'x 833, 836 (5th Cir. 2014) (citing 12 U.S.C. § 2605(e), (f)).

8

Martzall has pleaded no damages as a result of SPS's alleged RESPSA violation. It makes no difference that Martzall seeks only declaratory and injunctive relief in this case; such relief is unavailable unless he can first establish a cause of action under RESPA, which requires actual damages. *See Lewis v. U.S. Bank N.A. as Tr. for Reg. Holders of Asset Backed Certificates, Series 2005-HE4*, No. CV SA-19-CA-1431-FB, 2020 WL 12991126, at *1 (W.D. Tex. Jan. 7, 2020) (holding "RESPA claims fail[ed] as a matter of law because plaintiff d[id] not allege actual damages as a result of any RESPA violation. . . . [and therefore] plaintiff [wa]s not entitled to declaratory relief, injunctive relief, or attorney's fees as there [wa]s no viable underlying cause of action in th[e] case"); *McGee*, 2021 WL 1135035, at *2–3 (granting summary judgment where plaintiff seeking injunctive relief for violation of 12 C.F.R. § 1024.41 "ha[d] not presented evidence that she incurred any actual damages. . . . [and] apparently continue[d] to reside at the Property").

For the foregoing reasons, SPS is entitled to summary judgment on Martzall's RESPA claim.

    ii.  *SPS's* res judicata *defense.*

SPS alternatively argues that it is entitled to summary judgment on Martzall's RESPA claim because it is *res judicata*—based on the two prior lawsuits which were consolidated and dismissed with prejudice by this Court. (Docket Entry 7 at 9; *See* SA-22-CV-18-XR; SA-22-CV-608-XR.) For the reasons that follow, this argument fails.

"[W]hether a federal court diversity judgment is *res judicata* must be determined according to federal law in a subsequent federal diversity case." *Aerojet-Gen. Corp. v. Askew*, 511 F.2d 710, 716 (5th Cir. 1975) (emphasis added); *see also In re Hinsley*, 149 F.3d 1179, at *8 (5th Cir. 1998) ("[F]ederal law governs the preclusive scope of a prior federal judgment, regardless of whether

9

that judgment rests upon an issue governed by state law."). Accordingly, federal law controls whether SPS is entitled to summary judgment on the basis of *res judicata*, in light of the Court's prior dismissal with prejudice in SA-22-CV-18-XR.

*Res judicata* is an affirmative defense. FED. R. CIV. P. 8(c)(1). As such, SPS "bear[s] the burden to plead and prove it." *See Sacks v. Tex. S. Univ.*, 83 F.4th 340, 344 (5th Cir. 2023) (citing *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008)). SPS did plead *res judicata* as an affirmative defense in its answer. (Docket Entry 1-6, at 2.) But to be entitled to summary judgment on that basis, SPS must establish all the essential elements "beyond peradventure." *See Fontenot*, 780 F.2d at 1194. The "beyond peradventure" standard is a heavy one. *Carolina Cas. Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, 923 (N.D. Tex. 2009). The essential elements of *res judicata* are that: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Sacks*, 83 F.4th at 344 (quoting T*est Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005)).

The first three elements are indeed satisfied. The summary judgment evidence establishes beyond peradventure that the present and prior lawsuits involve the same defendants; SPS was the defendant in SA-22-CV-608-XR, and became a defendant in SA-22-CV-18-XR, once the two cases were consolidated. And this Court properly exercised its diversity jurisdiction over the two prior cases. It is also clear beyond peradventure that the Court's prior dismissal with prejudice (5:22-CV-18-XR, Docket Entry 39) was a final judgment on the merits. *See MAZ Encryption Techs., LLC v. Blackberry Ltd.*, 347 F. Supp. 3d 283, 292 (N.D. Tex. 2018) ("A dismissal with prejudice is a final judgment on the merits for claim preclusion purposes.") (citing *Oreck Direct, LLC v.*

*Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009)).  The hangup is that SPS failed to demonstrate beyond peradventure that the prior and present lawsuits involved the same claim or cause of action.

The Court must apply a "transactional test to determine whether both suits involve the same claim or cause of action." *Sacks*, 83 F.4th at 344.  Under this test, *res judicata* bars litigation of "all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose." *Id.*  In short, "[t]he critical issue is whether the two actions are based on the same nucleus of operative facts." *Id.* at 344–45 (quoting *New York Life Ins. Co. v. Gillispie*, 203 F.3d 384, 387 (5th Cir. 2000) (internal quotations omitted).

Here, all three suits concern the lawfulness of attempted foreclosure sales of the Property. SPS argues that Martzall's RESPA claim is *res judicata* because, with reasonable diligence, he could have litigated it in the prior suits. (Docket Entry 7 at 10.)  The Court disagrees.  Despite the surface-level similarities between these cases, "[s]ubsequent wrongs by a defendant constitute new causes of action not barred by *res judicata* when those wrongs occurred either after the plaintiffs had filed their prior lawsuit or after the district court had entered judgment in the prior lawsuit." *Sacks*, 83 F.4th at 345 (internal quotations omitted) (emphasis added) (quoting *Davis v. Dall Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004)).  In other words, *res judicata* does not bar "claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Sacks*, 83 F.4th at 345 (quoting *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955)).

In the present case, Martzall's RESPA claim charges that SPS engaged in impermissible "dual tracking" by posting notice of the January 3, 2023, foreclosure sale while simultaneously considering loss mitigation assistance options for Martzall. (Docket Entry 1-4, at 2–3.)  To support his claim, Martzall attached several letters to his complaint, which he purportedly sent to SPS. (*Id.*

11

at 9–11.) The first of these letters, apparently sent on November 26, 2022, describes SPS "recently den[ying]" a request for loss mitigation assistance, and suggests that, on November 25, 2023, SPS requested additional "documentation" from Martzall. (*Id.* at 11.) The other two letters appear to have been sent to SPS on December 26, 2022—two days before Martzall filed the present lawsuit in state court—and also refer to ongoing loss mitigation assistance negotiations. (*Id.* at 9–10.) While it is unclear from the record when this most recent loss mitigation process began, SPS has not shown beyond peradventure that it was ongoing *before* the Court entered its dismissal with prejudice in the prior suits—*i.e.*, before October 5, 2022. (*See* SA-22-CV-18-XR, Docket Entry 39.)

Drawing all inferences from the undisputed summary judgment record in the light most favorable to Martzall, SPS has failed to demonstrate beyond peradventure that Martzall's RESPA claim could have been brought in the prior, consolidated lawsuit. Thus, while SPS is entitled to summary judgment on Martzall's RESPA claim, it is not on account of *res judicata*.

**IV.   SPS's Motion for Non-Monetary Sanctions.**

   **a.  *Legal standards*.**

"A district court has jurisdiction to impose a pre-filing injunction to deter vexatious, abusive, and harassing litigation." *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 187 (5th Cir. 2008). Neither an "irreparable injury" nor an "inadequate remedy at law" are necessary for the issuance of an injunction against a vexatious litigant. *Id.* at 189 (quoting *In re Martin-Trigona*, 737 F.2d 1254, 1262 (2d Cir. 1984)). Rather, in determining whether to impose a pre-filing injunction, the Court must weigh all the relevant circumstances, including the following factors:

> (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on

the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Id.* at 189 (quoting *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 818 (4th Cir. 2004)). The Court may consider federal and state court proceedings alike in making its decision. *Id.* at 191.

In limited circumstances, courts may issue "narrowly tailored orders enjoining repeatedly vexatious litigants from filing *state court* actions. . . ." *Newby v. Enron Corp.*, 302 F.3d 295, 302 (5th Cir. 2002) (emphasis added) (holding district court did not abuse its discretion by enjoining law firm from filing new state-court lawsuits where it had repeatedly sought *ex parte* temporary restraining orders in state court); *but see Baum*, 513 F.3d at 186, 192 (holding district court abused its discretion by enjoining litigants from filing new claims "in courts or with agencies in the state of Texas without the [court's] express written permission," because "those courts [or agencies] [we]re capable of taking appropriate action on their own").

b. *Analysis.*

Here, the record of federal and state-court proceedings demonstrates that Martzall has filed three duplicative lawsuits—with no intention of actually prosecuting his claims—each aimed at halting any foreclosure sale of the Property. Martzall ostensibly filed each of these lawsuits solely to delay foreclosure and not because he believed in the veracity of his claims and wanted to vindicate his rights through litigation. Indeed, shortly after the Court denied Martzall's motion for a preliminary injunction in his first suit, he ceased to participate any further in that case. (*See* 5:22-CV-18-XR, Docket Entry 21; Text Order Dated May 13, 2022.) Instead, Martzall filed a new lawsuit in state court, ostensibly for no other reason than to obtain another *ex parte* temporary restraining order and effectively defeat this Court's ruling. (*See* SA-22-CV-608-XR, Docket Entry 1-3, at 1.) Once that second lawsuit was removed and consolidated with the first, Martzall told the Court that he had no intention of participating in the case. (SA-22-CV-18-XR, Docket Entry 38,

13

at 1.) The Court dismissed the case with prejudice. (SA-22-CV-18-XR, Docket Entry 39.) Martzall then filed yet another lawsuit in state court, again obtaining an *ex parte* temporary restraining order enjoining any foreclosure sale of the Property. (Docket Entry1-3.)

This third and current lawsuit was removed on January 4, 2023, and Martzall has failed to participate entirely since its removal. The Court even issued a show-cause order, which Martzall ignored. (*See* Docket Entry 10.) In other words, Martzall's suits were not filed upon any good faith belief that they had merit. Martzall evidently had no intention of actually litigating any of his asserted claims; rather, the lawsuits ostensibly were pretexts for seeking *ex parte* temporary restraining orders in state court. In short, Martzall's apparent goal has been to delay.

This conduct has significantly burdened SPS because it has had to postpone foreclosure proceedings and defend against frivolous lawsuits. Martzall has also burdened the Court, where the opportunity costs of dealing with his lawsuits undermines the Court's ability to efficiently manage its docket. *See Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986) (sanctioning vexatious *pro se* litigant and noting that he had "no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets").

Thus, the first three *Baum* factors clearly support a pre-filing injunction. The comparative inadequacy of alternative sanctions is less obvious. SPS did not present any evidence or argument as to why alternative sanctions would be inadequate. And perhaps a fine taxed against Martzall would suffice to deter further misconduct. However, the record also evinces an obstinate refusal on Martzall's part to make *any* mortgage payments for over *seven years*. (Docket Entry 7 at 1, 3.) This tends to suggest an imperviousness to legal obligations to make payments. In any event, the adequacy of alternative sanctions is only one of several factors the Court must weigh before deciding whether a pre-filing injunction is an appropriate means of deterring a vexatious litigant.

*See Baum*, 513 F.3d at 189 (instructing courts to "weigh all the relevant circumstances," with none of the four specifically enumerated factors having any outsized influence). All things considered, the Court finds that a pre-filing injunction would be appropriate in this case.

The specific pre-filing injunction SPS requests, however, is overbroad. SPS asks that Martzall "be required to seek and obtain the written permission of this Court prior to filing any additional lawsuits relating to the subject mortgage or Property." (Docket Entry 8 at 4.) Notably, the requested injunction is not limited to subsequent lawsuits in federal court; it purports to enjoin subsequent suits in *state* court as well. Indeed, SPS's primary complaint appears to be with Martzall's "pattern of obtaining *ex parte* temporary restraining orders in state court. . . ." (Docket Entry 8, at 3.) Although an injunction against state filings might be permissible, *see Newby*, 302 F.3d at 299–303, the Court should nevertheless decline to enter one, because a less drastic injunction is available that would avoid encroaching upon the jurisdiction of the state courts. *See Baum*, 513 F.3d at 192 (vacating such an injunction because the state courts "[we]re capable of taking appropriate action on their own").

Accordingly, the Court should provide SPS with injunctive relief for cases that are brought before it. It should order Martzall to obtain leave of the Court before filing any case in this Court involving the subject mortgage or Property, or before filing any documents after removal of any such case brought by Martzall from state court to the Western District of Texas.[4] *Cf. Sassower v. Abrams*, 833 F. Supp. 253, 271 (S.D. N.Y. 1993) (issuing removal-triggered injunction in lieu of

---

[4] The Court considered a narrower injunction, limited to removed actions involving *both* the subject mortgage or Property *and* the same defendants: *viz.*, Deutsche or SPS. However, Martzall's history of litigation—first suing Deutsche and then suing SPS once the Court denied his motion for a preliminary injunction in the first suit—suggests that he may attempt to circumvent the injunction by finding a new defendant to sue. Thus, a broader pre-filing injunction triggered by the removal of any action involving the subject mortgage or Property is appropriate.

enjoining new suits in state court). With regard to removed cases, Martzall should be required to submit a "Motion for Leave to Continue Action" in which he must certify that his claims have never been raised or disposed of on the merits by any court. *See id.* Martzall should be required to attach a copy of this report and recommendation, and the Court's order regarding it, to his motion for leave. *See id.* at 273. Until such leave is obtained, the Clerk of the Court should refuse to docket any of Martzall's filings; any motions or documents he serves on other parties should be deemed void *ab initio*. *See id.* at 271–72. Martzall's failure to strictly comply with this pre-filing injunction should result in dismissal of his case. *See, e.g.*, *Hao Liu v. Wells Fargo Bank*, No. 4:19-CV-849-ALM-CAN, 2019 WL 7875056, at *2 (E.D. Tex. Dec. 12, 2019) (recommending denial of motion for leave because plaintiff did not strictly comply with pre-filing injunction), *report and recommendation adopted*, No. 4:19-CV-849, 2020 WL 467766 (E.D. Tex. Jan. 29, 2020); *Sassower*, 833 F. Supp. at 273 ("Failure to comply strictly with these requirements will be sufficient grounds for summarily denying leave to file.").

## V.     Conclusion and Recommendation.

For the foregoing reasons, I recommend that SPS's Motion for Summary Judgment (Docket Entry 7) be **GRANTED** and that its Motion for Non-Monetary Sanctions (Docket Entry 8) be **GRANTED IN PART and DENIED IN PART** as described above. I recommend that the Court adopt the following language in imposing a pre-filing injunction:

> It is hereby **ORDERED** that before filing any case in this Court involving his mortgage or the property located at 16543 Inwood Cove, San Antonio, Texas, or within 30 days of the removal of any such case brought by James Martzall from state court to the Western District of Texas, Martzall must obtain leave of the Court before the action may continue. To obtain such leave, Martzall must certify in a "Motion for Leave to Continue Action" that his claims have never been raised or disposed of on the merits by any court. Martzall must attach to the motion a copy

of this Order and a copy of the Magistrate Judge's Report and Recommendation. The Clerk of the Court is directed not to docket any of Martzall's other filings until such leave has been granted. Until such leave is granted, any other motions or documents that Martzall serves on the defendants shall be nullities. Martzall's failure to strictly comply with these requirements shall result in dismissal of his case.

## VI.     Notice of Right to Object[5]

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this Report and Recommendation must be filed within **fourteen (14) days** after being served with a copy of the same, unless this time period is modified by the District Court. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties. Absent leave of Court, **objections are limited to twenty (20) pages in length**. An objecting party must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

---

[5] "Notice and a hearing are required if the district court sua sponte imposes a pre-filing injunction." *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 189 (5th Cir. 2008). Of course, the Court has not recommended any sua sponte action because SPS moved for a pre-filing injunction in this case. (Docket Entry 8.) To the extent that the undersigned recommends an injunction different from that requested by SPS, upon receipt of this report and recommendation, Martzall "has been afforded . . . notice and opportunity to respond." *See Walker v. Hunt*, No. 1:19-CV-246-LG-RPM, 2022 WL 16921823, at *4 (S.D. Miss. Nov. 14, 2022). The report "clearly notif[ies Martzall] . . . of the factual basis for the proposed sanction and informs him of his right to object to the[ Court's] findings and conclusions of law." *See Id.*

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo* review by the District Court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to, proposed findings and conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on December 12, 2023.

_____
Henry J. Bemporad
United States Magistrate Judge